FILED

2009 SEP 14  PM 1:33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

WILMER CUTLER PICKERING
   HALE AND DORR LLP
James M. Dowd (SBN: 259578)
james.dowd@wilmerhale.com
Bethany Stevens (SBN: 245672)
bethany.stevens@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILMER CUTLER PICKERING
   HALE AND DORR LLP
Elizabeth Rogers Brannen (SBN: 226234)
elizabeth.brannen@wilmerhale.com
1117 California Avenue
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff
TERADYNE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERADYNE, INC.,

        Plaintiff,

v.

XYRATEX TECHNOLOGY, LTD.,

        Defendant.

CASE CV09-6657 DSF (FFMx)

**PLAINTIFF TERADYNE, INC.'S COMPLAINT FOR ANTITRUST VIOLATIONS**

**DEMAND FOR JURY TRIAL**

---

PLAINTIFF TERADYNE, INC.'S COMPLAINT

US1DOCS 7282385v2

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Teradyne, Inc. ("Teradyne") brings this complaint seeking relief for Xyratex Technology, Ltd.'s ("Xyratex") anticompetitive and unlawful acts in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 17200 et seq. of California's Business and Professions Code. Xyratex is a monopolist in the worldwide market for non-proprietary hard disk drive testers and has attempted to maintain and enhance its monopoly by intentionally misleading the Patent Office in pursuing the patent application that resulted in United States Patent No. 6,826,046; by initiating a patent infringement action against Teradyne with knowledge that the '046 patent is invalid and was obtained through fraudulent conduct; and by using the lawsuit to stifle competition, and to attempt to dissuade customers and potential customers from doing business with Teradyne.

## PARTIES

1. Plaintiff Teradyne is a Massachusetts corporation, with its principal place of business at 600 Riverpark Drive, North Reading, Massachusetts 01864.

2. On information and belief, Defendant Xyratex is a limited liability company organized under the laws of Bermuda, with its principal place of business at Langstone Road, Havant PO9 1SA, United Kingdom.

## JURISDICTION AND VENUE

3. Teradyne's claims arise under Section 2 of the Sherman Act, 15 U.S.C. §2. This Court has jurisdiction pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §15 and §26, and 28 U.S.C. §1331 and §1337.

4. Teradyne's claim arises under Cal. Bus. & Prof. Code, § 17200 et seq. This Court has jurisdiction over the fifth claim pursuant to its pendant jurisdiction.

5. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 and 15 U.S.C. § 22.

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

## INTERSTATE COMMERCE

6. Xyratex's activities and conduct that are the subject of these claims have substantially affected interstate trade and commerce as well as foreign commerce.

## BACKGROUND

### Xyratex's Dominant Position in the Market for Non-Proprietary Hard Disk Drive Testers

7. This case concerns systems for testing hard disk drives. In order to meet computer industry standards, hard disk drive manufacturers test each of their hard disk drives to ensure that they can perform certain operations at specified temperatures. Hard disk drives are typically tested in very large volumes. Because the testing process takes hours, and because many of the drives fail before the testing process is complete, IBM, Xyratex, Teradyne, and others, have developed testers that can identify a drive that has failed, remove it from the tester, replace it with a new drive, and restart the testing protocol for the newly inserted drive, all without disrupting the testing process for the remaining drives.

8. On information and belief, most of the significant hard disk drive manufacturers initially developed their own systems for testing hard disk drives. These hard disk drive testers were considered proprietary, and were not made available for sale to other manufacturers of hard disk drives.

9. More recently, hard disk drive manufacturers have begun purchasing non-proprietary hard disk drive testers, supplied by third party vendors.

10. Xyratex has been the dominant supplier of non-proprietary hard disk drive testers since its founding in 1994. On information and belief, Xyratex was formed in connection with a management buyout of IBM's hard disk drive operations in Havant, UK. Xyratex was able to readily enter the market for non-proprietary hard disk drive testers because it acquired IBM's engineers and operations in Havant. In contrast, other companies seeking to enter this market, including Teradyne, have faced

significant barriers to entry, including the massive capital costs and advanced technical capabilities required to design and produce a hard disk drive tester, the difficulty of convincing customers to accept a new tester, and the very real risk that the substantial investment costs will not be recouped.

11. On information and belief, Xyratex was not only the dominant supplier of non-proprietary hard disk drive testers, but in fact was the *only* supplier of non-proprietary disk drive testers for production, until Teradyne entered this market in 2008. Indeed, Xyratex has publicly acknowledged its dominant position in multiple public statements and filings. For example, Xyratex stated in its Annual Report for 2007 that "since its separation from IBM in 1994, [it had] not lost a key customer to a competitor." Consistent with these statements, Xyratex describes itself in its Complaint in a concurrently pending action in this District, *Xyratex Technology, Ltd. v. Teradyne, Inc.*, 2:08-cv-04545-SJO-PLA, as the "leading supplier of asynchronous disk drive testing equipment to disk drive manufacturing companies."

12. On information and belief, Xyratex's position as the dominant supplier of non-proprietary testers has been strengthened by the fact that, once a manufacturer switches to non-proprietary testers, it is difficult for that manufacturer to return to using proprietary testers. A manufacturer that uses non-proprietary testers could not return to using its own proprietary testers without rehiring a research and development staff, and re-instituting development and manufacturing operations for the testers. The costs would be very high, if not prohibitive. Moreover, because a tester will only work if it is tailored to the manufacturer's testing process, a manufacturer could not purchase a proprietary hard disk drive tester from another hard disk drive manufacturer without a significant risk of divulging proprietary business information, including the manufacturer's testing process.

13. Opportunities to sell hard disk drive testers expanded considerably when the two manufacturers which, collectively, sell the majority of hard disk drives

PLAINTIFF TERADYNE, INC.'S COMPLAINT

- 3 -

US1DOCS 7282385v2

switched to non-proprietary testers. On information and belief, before Teradyne began selling non-proprietary hard disk drive testers, Xyratex was the sole supplier of hard disk drive testers for production to these manufacturers.

### Relevant Market

14. The relevant product market is the market for non-proprietary hard disk drive testers. On information and belief, hard disk drive manufacturers that produce their own proprietary testers, for use in testing their own hard disk drives, do not sell their proprietary testers to third parties. Moreover, because a tester will only work if it is tailored to a manufacturer's testing process, a manufacturer could not purchase a proprietary hard disk drive tester from another hard disk drive manufacturer without a significant risk of divulging proprietary business information, including the manufacturer's testing process.

15. The relevant geographic market is worldwide.

16. On information and belief, there are significant barriers to entry in the worldwide market for non-proprietary hard disk drive testers (the "relevant market"). These significant barriers to entry include the large capital costs and advanced technical know-how required to design and build a hard disk drive tester, Xyratex's existing installed base of hard disk drive tester equipment, the difficulty of convincing customers to accept a new tester, and the very real risk that the substantial investment costs will not be recouped.

### Xyratex's Monopoly Position

17. At all relevant times, Xyratex has dominated the market for non-proprietary hard disk drive testers, supplying the vast majority of non-proprietary hard disk drive testers. On information and belief, even if proprietary hard disk drive testers were included, Xyratex still supplies the majority of all disk drive testers worldwide and also possesses monopoly power in that broad market category.

18. Xyratex has held a dominant position in the relevant market for non-proprietary disk drive testers since its inception in 1994.

19. Because of its dominant position, Xyratex is able to raise and maintain prices above competitive levels. Indeed, prior to Teradyne's efforts to enter the market, Xyratex faced no competition. If it is able to destroy competition from Teradyne, Xyratex's ability to control prices in the relevant market at supracompetitive levels will continue or increase.

### Xyratex's Illegitimate Effort To Maintain Its Monopoly Position Through The Fraudulent Procurement Of The '046 Patent

20. Xyratex has sought to ensure its continued dominance of the market for non-proprietary hard disk drive testers not through legitimate competition, but rather through the filing of a fraudulent patent application, and through intentional interference with Teradyne's business relationships with its customers and potential customers.

21. The '046 patent issued from a patent application filed in the UK on November 29, 1999, and filed in the U.S. on November 23, 2000. The named inventors of the '046 patent submitted an inventors oath, attesting that they were the "original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention." Contrary to his representation to the Patent Office, at least one of the named inventors, William Saville, in fact derived the invention that he claimed as his own from an earlier system for testing hard disk drives, called the "Customer Simulated Operation" or "CSO" tester (the "CSO tester").

22. The CSO tester was developed and used by IBM at its Havant facility to test Redwing hard disk drives in the early 1990s. The CSO tester included approximately 96 separate slots for testing disk drives. Each of the disk drives was contained in a disk drive carrier. The CSO tester included a robot that placed the disk

drive carriers, each containing a single disk drive, into the slots. The CSO tester also included software that controlled the temperature of each of the disk drives through fans associated with each of the disk drives. The CSO tester was capable of independently controlling the temperature of each of the disk drives during testing of the disk drives.

23. On information and belief, Mr. Saville was aware of the CSO tester during the prosecution of the '046 patent. Mr. Saville was employed by IBM at its Havant facility in the early 1990s. The CSO tester was a "showpiece" at IBM's Havant facility; was prominently displayed at the Havant facility; was shown to visiting dignitaries, schoolchildren, and other visitors; and was generally known to IBM employees working at the Havant facility. In fact, the CSO tester was located near the entrance to the employee cafeteria at the Havant facility.

24. In addition, prior to the conception of the claimed invention, the chief architect of the CSO tester, David James, specifically discussed with Mr. Saville the concept of a tester, like the CSO tester, that was capable of independently controlling the temperature of each of the disk drives. Mr. Saville responded that customers would not be interested in such a system, because it would be too expensive to build.

25. On information and belief, in addition to Mr. Saville's exposure to the CSO tester at IBM and through his conversation with Mr. James, Mr. Saville also interacted with multiple Xyratex engineers familiar with the CSO tester during the time period over which he claims to have conceived and reduced to practice the claimed invention. A number of the Xyratex engineers working with Mr. Saville on the system embodying the claimed invention previously worked at IBM's Havant facility and would have been familiar with the CSO tester. Xyratex's current CEO, Steve Barber, also previously worked at IBM's Havant facility as the manufacturing manager for Redwing disks, and would have been familiar with the CSO tester.

26. On information and belief, Mr. Saville failed to disclose information concerning the CSO tester, and his derivation of the claimed invention from the CSO tester, with the intention of deceiving the Patent Office. He also submitted the false inventor's oath with the intention of deceiving the Patent Office. At the time that he was prosecuting the '046 patent application, Mr. Saville knew that his employer, Xyratex, intended to use any resulting patents as a competitive tool. In fact, as further described below, Xyratex has since used the '046 patent in an effort to stifle competition in the market for non-proprietary systems for testing hard disk drives.

Teradyne's Entry Into the Market for Non-Proprietary Hard Disk Drive Testers

27. Xyratex has used the fraudulently obtained '046 patent in an effort to stifle competition, and to attempt to maintain its monopoly position in the market for non-proprietary hard disk drive testers.

28. In 2008, Teradyne became the first company to challenge Xyratex's monopoly position in the market when it developed the Neptune hard disk drive tester. The Thai subsidiary of a significant disk drive manufacturer subsequently ordered multiple Neptune testers from Teradyne's Singapore subsidiary, Teradyne Pte., Ltd..

29. At the time Teradyne entered the market for non-proprietary hard disk drive testers, Teradyne was uniquely positioned to succeed in this market. Teradyne has been in business since 1960, is a leading supplier of automated test equipment and, prior to entering the market for non-proprietary hard disk drive testers, had already achieved significant success and many technical "firsts" in the areas of assembly test equipment, semiconductor test equipment, and vehicle diagnostic equipment.

30. Since learning of the initial orders to Teradyne Pte., Ltd., and the corresponding threat to its monopoly position, Xyratex has used its fraudulently obtained '046 patent in an attempt to block Teradyne's entry into the market, and to

PLAINTIFF TERADYNE, INC.'S COMPLAINT
- 7 -

US1DOCS 7282385v2

interfere with Teradyne's business relationships with customers and potential customers.

31. In July 2008, shortly after Teradyne entered the market, Xyratex sued Teradyne for infringement of the '046 patent, seeking to enjoin Teradyne from any further sales of its Neptune tester. That lawsuit is currently proceeding before the Honorable James S. Otero in the Central District of California. *See Xyratex Technology, Ltd. v. Teradyne, Inc.*, 2:08-cv-04545-SJO-PLA.

32. Consistent with this unlawful and monopolistic conduct, Xyratex's CEO, Steve Barber, has repeatedly confirmed Xyratex's intention to use its patents to stifle competition. For example, in an earnings call held shortly after the first purchase orders were issued for Neptune testers, Mr. Barber reiterated that Xyratex "remain[s] continually paranoid with regard to competitive threat," and confirmed Xyratex's intention "to use [its patents] aggressively in order to protect both our intellectual property and our market leadership position."

## FIRST CLAIM FOR RELIEF

### (Violation of Section 2 of the Sherman Act – Walker Process Claim for Monopolization)

33. Teradyne incorporates by reference paragraphs 1 through 32, above.

34. Xyratex's conduct, as described above, violates Section 2 of the Sherman Act, 15 U.S.C. § 2.

35. Xyratex possesses monopoly power in the relevant market for non-proprietary hard disk drive testers, maintaining a dominant share of a market with high entry barriers.

36. Xyratex has willfully maintained and enhanced its monopoly power in the relevant market for non-proprietary hard disk drive testers through anticompetitive and exclusionary conduct, including by attempting to enforce a patent that it knows was obtained by fraud, with the effect of weakening competition and unreasonably restraining trade in violation of Section 2 of the Sherman Act.

37.     Xyratex has engaged in this unlawful conduct with the specific intention of enhancing its market power in the market for non-proprietary hard disk drive testers and, if it is successful, will enhance its market power in the market for non-proprietary hard disk drive testers by harming Teradyne as a competitor.

38.     Teradyne has been injured in its business and property, and has suffered irreparable injuries, as a direct and proximate result of the unlawful acts, practices and conduct of Xyratex described above.

39.     Teradyne will continue to suffer such injuries until and unless Xyratex's unlawful acts, practices and conduct are enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 2 of the Sherman Act – Walker Process Claim for Attempted Monopolization)

40.     Teradyne incorporates by reference paragraphs 1 through 39, above.

41.     Xyratex's conduct, as discussed above, violates Section 2 of the Sherman Act (15 U.S.C. § 2).

42.     Xyratex possesses monopoly power in the relevant market for non-proprietary hard disk drive testers or, in the alternative, at all relevant times has had a dangerous probability of success in monopolizing this market.

43.     Xyratex has acted with the specific intention of acquiring and/or extending its monopoly power through anticompetitive and exclusionary conduct, including by attempting to enforce a patent that it knows was obtained by fraud, with the effect of weakening competition and unreasonably restraining trade in violation of Section 2 of the Sherman Act.

44.     Teradyne has been injured in its business and property, and has suffered irreparable injuries, as a direct and proximate result of the unlawful acts, practices and conduct of Xyratex described above.

45. Teradyne will continue to suffer such injuries until and unless Xyratex's unlawful acts, practices and conduct are enjoined by this Court.

### THIRD CLAIM FOR RELIEF

**(Violation of Section 2 of Sherman Act – "Sham Litigation" Claim for Monopolization)**

46. Teradyne incorporates by reference paragraphs 1 through 45, above.

47. Xyratex's conduct violates Section 2 of the Sherman Act (15 U.S.C. § 2).

48. Xyratex possesses monopoly power in the relevant market for non-proprietary hard disk drive testers, maintaining a dominant share of a market with high entry barriers.

49. Xyratex has willfully maintained and enhanced its monopoly power in the relevant market for non-proprietary hard disk drive testers through anticompetitive and exclusionary conduct, including by attempting to enforce a patent that it knows is invalid and/or was obtained by fraud, with the effect of weakening competition and unreasonably restraining trade in violation of Section 2 of the Sherman Act.

50. Xyratex has engaged in this unlawful conduct with the specific intention of enhancing its market power in the market for non-proprietary hard disk drive testers and, if it is successful, will enhance its market power in the market for non-proprietary hard disk drive testers by harming Teradyne as a competitor.

51. Teradyne has been injured in its business and property, and has suffered irreparable injuries, as a direct and proximate result of the unlawful acts, practices and conduct of Xyratex described above.

52. Teradyne will continue to suffer such injuries until and unless Xyratex's unlawful acts, practices and conduct are enjoined by this Court.

## FOURTH CLAIM FOR RELIEF

### (Violation of Section 2 of the Sherman Act – "Sham Litigation" Claim for Attempted Monopolization)

53. Teradyne incorporates by reference paragraphs 1 through 52, above.

54. Xyratex's conduct, as discussed above, violates Section 2 of the Sherman Act (15 U.S.C. § 2).

55. Xyratex possesses monopoly power in the relevant market for non-proprietary hard disk drive testers or, in the alternative, at all relevant times has had a dangerous probability of success in monopolizing this market.

56. Xyratex has acted with the specific intention of acquiring and/or extending its monopoly power through anticompetitive and exclusionary conduct, including by attempting to enforce a patent that it knows is invalid and/or obtained by fraud, with the effect of weakening competition and unreasonably restraining trade in violation of Section 2 of the Sherman Act.

57. Teradyne has been injured in its business and property, and has suffered irreparable injuries, as a direct and proximate result of the unlawful acts, practices and conduct of Xyratex described above.

58. Teradyne will continue to suffer such injuries until and unless Xyratex's unlawful acts, practices and conduct are enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### (Violation of Sections 17200 et seq. of the California Business and Professions Code – Unfair Competition)

59. Teradyne incorporates by reference paragraphs 1 through 58, above.

60. Teradyne is cultivating relationships with customers and potential customers that create a probability of economic benefit for Teradyne. Xyratex knows about these relationships and has used its fraudulently obtained '046 patent to intentionally interfere with Teradyne's economic relationships with these customers and potential customers.

61. Xyratex's actions as discussed above are wrongful independent of their interfering character and constitute unfair and unlawful business practices in violation of California Business & Professions Code §§ 17200 et seq.

62. Teradyne has been injured in its business and property, and has suffered irreparable injuries, because of the unlawful acts, practices and conduct of Xyratex described above.

63. Teradyne will continue to suffer such injuries until and unless Xyratex's unlawful acts, practices and conduct are enjoined by this Court.

## PRAYER FOR RELIEF

64. WHEREFORE, Teradyne prays for judgment as follows:

a. A judgment that Xyratex has attempted to enforce a patent that it knows was obtained by fraud, with an intent to monopolize the relevant market, in violation of Section 2 of the Sherman Act, entitling Teradyne to treble damages under Section 4 of the Clayton Act;

b. A judgment that Xyratex has attempted to enforce the '046 patent in bad faith, knowing that the patent is invalid and/or unenforceable, and with an intent to monopolize the relevant market, in violation of Section 2 of the Sherman Act, entitling Teradyne to treble damages under Section 4 of the Clayton Act;

c. A judgment that Xyratex has engaged in unfair and unlawful business practices in violation of California Business & Professions Code §§ 17200 et seq.

d. A declaration that this is an exceptional case pursuant to 35 U.S.C. § 285, entitling Teradyne to its costs of suit, including attorneys' fees;

e. An award to Teradyne of its actual compensatory damages according to proof at trial, including without limitation its reasonable attorney's fees, expenses and costs incurred in this action pursuant to 15 U.S.C. § 15(a) and 35 U.S.C. § 285;

f. An award to Teradyne of treble its actual damages;

1   g. An award to Teradyne of pre- and post- judgment interest as permitted by
2   law;
3   h. An injunction preliminarily and permanently enjoining Xyratex, pursuant
4   to Section 16 of the Clayton Act, 15 U.S.C. § 26, from continuing or resuming any
5   violations of law set forth in these claims, or any similar act, practice, plan, scheme,
6   condition, agreement or understanding to exclude or limit competition in the market
7   for non-proprietary disk drive testers, together with such additional affirmative
8   injunctive relief as may be required to restore, create or perpetuate competition in the
9   market for non-proprietary disk drive testers.
10  i. An award to Teradyne of such other and further relief as this Court
11  deems just and proper.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

Dated: September 14, 2009      By: *Janice M. Dowd (BAS)*

JAMES M. DOWD

PLAINTIFF TERADYNE, INC.'S COMPLAINT
- 13 -

USIDOCS 7282385v2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

### CV09- 6657 DSF (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
TERADYNE, INC.

**DEFENDANTS**
XYRATEX TECHNOLOGY, LTD.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
James M. Dowd, WILMER CUTLER PICKERING HALE AND DORR, LLP
350 S. Grand Ave., Suite 2100, Los Angeles, CA 90071
Telephone: (213) 443-5300

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be determined at trial.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Antitrust Action, 15 U.S.C. § 2

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV09-6657

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☐ No   ☑ Yes
If yes, list case number(s): Potentially related to Case No. CV08-04545-SJO (PLAx) (See Accompanying Notice of Related Case)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☑ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Massachusetts |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | United Kingdom |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _James M. Darud (BMS)_    Date September 14, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

James M. Dowd (SBN 259578)
Wilmer Cutler Pickering Hale and Dorr LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERADYNE, INC.<br><br>PLAINTIFF(S)<br>v.<br>XYRATEX TECHNOLOGY, LTD.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-6657 DSF (FFMx)<br><br>SUMMONS |

TO:   DEFENDANT(S):  XYRATEX TECHNOLOGY, LTD.

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _James M. Dowd_____, whose address is _350 S. Grand Ave., Suite 2100, Los Angeles, CA 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __SEP 14 2009__          By: _Natalie Hongyouca_
                                         Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS